Good morning, Your Honors. If it pleases the Court, I'm Shauna Shiffrin for the Plaintiffs. I'd like to reserve two minutes for rebuttal. Section 86 of the National Bank Act creates a private cause of action when card issuers charge illegal interest. To be legal, their charges must be legally enforceable, but we allege that their $39 penalty fees for very minor contractual breaches, for which they suffer almost no losses, could not be legally enforced given the substantive due process protection articulated in State Farm v. Campbell. As that case explained at 538 U.S. 419, grossly excessive penalties serve no legitimate purpose and constitute an arbitrary deprivation of property. Counsel, if I could just stop you for a second. Sure. I've read your law review article, I've read the briefs, and while ingenious, you have to assume point after point after point after point before finally getting into your main issue. I'd like to start with the Gore case from which you launched this. That case, of course, dealt with punitive damages imposed by the state on Alabama when it purported to regulate, in effect, what people whose, well, BMW was selling all over the country, and they tried to aggregate the damages from there. That's a far cry from an interest charge, at least as construed by the Supreme Court, that both the NBA and Didact permit under the regulations. They say this is interest. How do you get from Gore, which is a state-imposed punitive damage case, to a situation where the statutes in question and the regulations implementing them say that whatever the interest rate and whatever is permitted by the home state, in this case the domicile, usually Delaware or whatever, North Dakota, if they permit it, it's interest, and the parties can contractually agree to do it. Now, whether people actually read the contracts, that's another matter. We don't have that in front of us right now, or whether they understand it if they do read it, but the reality is that people who sign up for these cards agree that this is what's going to happen. How do you get from Gore to that? Well, Your Honor, I think you've raised three issues. Okay. One about punitive damages, one about state action, and one about the relevance of contracts in this case. Okay. Let me first address the issue about punitive damages. Okay. As you pointed out, the court in Smiley interpreted the National Bank Act to allow these charges as forms of interest. But the purpose of that inquiry was about exportation doctrine, whether you could, as a choice of law doctrine, impose the law of the home state onto the consumer's home state. It was not a ruling about whether or not these are penalties. And, in fact, in Smiley, the court explicitly declared that these are interest and may also be penalties. When the Supreme Court— Forgive me. I don't want to interrupt your flow of thought too much here, but it's the Congress that made this decision. I know you're going to talk about Reitman later on, but the reality is that Congress said—rightly or wrongly, we don't always have to agree with Congress—but Congress said these are the rules. Whatever the state is, whatever the state law is, people can impose these situations. Smiley's a little different, but they did at least say that it is construed as interest, right? Well, Your Honor, there are two issues here. One is that any statute has to comply with constitutional demands, and merely labeling penalties as interest for the purpose of exportation doctrine doesn't resolve whether or not, for constitutional purposes, they serve as penalties. But let me just ask about that. Are punitive damages designed to deter immoral or morally blaming materials? Here, these parties enter these contracts voluntarily. They're told what the penalties will be. What is your response? My response is twofold. The first is that although the proper purpose of punitive damages or penalties is to deter immoral conduct, you shouldn't confuse what a penalty is with whether its justification is present. We think that substantive due process protections are all the more important when the justification for imposing the penalty is strained. What State Farm and Gore said is that the most important indicator is reprehensibility. And we have consumers who've done almost nothing wrong. They've just violated a rule. And the doctrine of State Farm and Gore is that when we use the legal system to impose penalties or punitive damages for violations, we have to do so in a reasonable and fair way. Suppose I go to a video store that charges unreasonably high fees, and I return my video late, and they have plenty of copies in stock. But nonetheless, they charge me a fee. Is that a punitive damage? Yes. And under standard contract law, those penalties or punitive damages would not be permitted, because under the common law of contract, promisees can only gain compensatory damages. And all penalty fees are disallowed on the grounds that there's nothing really that wrong with contractual breach, and this would be an arbitrary deprivation of property. Do you have any case to support that argument? Yes, we do. With respect to contracts? Yes. In the brief, we cite Hitz v. Interstate Bank, Beasley v. Wells Fargo, Kalinka. And what do they say? They all express the view that penalty fees that exceed compensatory damages and do not represent an approximation or an actual accounting of actual damages are disallowed because they are punitive. That's common law. That's correct. There's no question that penalty fees are not awarded for breach of contract. The issue here really is whether we can turn that into a constitutional argument on the basis that the Supreme Court took tort law and several years ago, for the first time, decided that tort law awards could violate the Constitution, despite Justice Scalia's view that that was not the original intent of the founders and had not been the law in this country for a couple of hundred years. So you're asking that we do with contracts what the Supreme Court decided after a couple of hundred years to do with torts, and that if you do it in the Constitution, you're simply incorporating the common law. Well, Your Honor, our position is a little different than that. I thought that was a nice, simple explanation. I like your explanation, but I'd like to refine it, Your Honor. Please do. Well, we're not arguing that the National Bank Act cannot authorize penalty fees. No, I didn't get that far. I didn't say that. All right. I was just trying your broad overall argument about constitutionality. Or am I wrong that you're arguing a lack of constitutionality here? We are arguing that the fees could not be judicially enforced, because that's contrary to State Farm, and we're also arguing that the National Bank Act should be interpreted to have limits, whereas as the defendants read the Act, it has no limits whatsoever. You don't have a case saying that, do you? No, we do not, because since penalty fees are disallowed throughout the common law, it is unlikely that cases like this would come up until just now, because this is a very anomalous act. By purporting to allow unlimited penalty fees, there's nothing else like it. Well, that's what you're calling them. That's what you're calling those penalty fees. That's not what the Act calls them. That's not what the regulations call them. They call them interest. Well, under the new Credit Card Act, they are called penalty fees. Well, that's not what you're suing under, is it? No, we are not. But if you're asking about what congressional intent is — Well, they can change their minds. There's no evidence that they've changed their minds. We would argue that they've clarified. But I think that the more proper place to look, Your Honor, is at the common law, and that — But with respect, counsel, the common law, even as enacted in the Uniform Commercial Code, which you're really talking about a concept of liquidated damages, yeah, there are concepts of penal and penalties and all that sort of thing. But the reality is that the Congress can override — indeed, any legislature can override the common law. You would agree with that, I assume, right? Within constitutional limits, Your Honor. Right, exactly. But when you refer back to Allstate and Gore and so on, it sounds like you're assuming that that case made your case. And it's nowhere close, is it? I mean, you're talking about torts and liquidated damages that are imposed by courts and by state law, whereas here you have federal law that allows the parties to individually set this rate by contract. That's light years apart. Now, I admit it's in the same universe of the Supreme Court's changing its mind that Judge Reinhart talked about. But there's no case that I'm aware of that makes that huge leap from state-imposed punitive damages, which have five or six bases, to regulating private contractual agreements on the basis of interest. Am I correct about that? Well, Your Honor, in Exxon, actually, at 554 U.S. 506, Justice Souter explicitly addresses the possibility that the due process protection will extend to contract injuries. But that didn't involve that in that case, though, right? No, it did not directly come up in that case. He was hypothesizing and — You're correct, Your Honor. — defined justice and did lots of nice things. But there's no case that deals with that, right? This is a case of first impression. But I think that the disanalogies are not present. The what? Disanalogies? The disanalogies that Your Honor was attempting to draw between the two cases I think are overstated. In Gore and in State Farm, one private party sought punitive damages from another private party, and the judicial award of those damages was subject to review. If this case — in the case of — certainly in Gore, where under the law of Alabama, the repainting of a BMW before it was delivered was considered a fraudulent act. They tried to aggregate all of the similar repaintings. I think there were several hundred across the country. The Supreme Court says, you know, you can't do that because it has to refer to your state and the law of your state. This was admittedly a wrongdoing, but you can't go that far. Well, here, you're trying to define what they did in the Congress as a wrongdoing, but I see no statutory or constitutional basis yet that says that the Congress cannot constitutionally authorize nationally chartered banks to charge the rates that the home states permit. We are not contesting Smiley or the exportation doctrine, Your Honor. We're just contesting that. These fees would be legally enforceable because to be enforceable, a judge would have to be willing to enforce them as a punitive damages award. Why? Why? Because — These are interest fees. Well, they may be called interest fees, but — That's a big difference, counsel. It's a big, big difference. I mean, under California law, I mean, I'm sure you're very familiar with California law and the usury laws and how that works and so on, but interest and penalties are quite different. There are certain things that the Constitution says you can charge up to X under certain circumstances, and the legislature and the people have said, well, you have to exempt loan brokers, you have to exempt attorneys, and you have to exempt real property brokers and so on and so on and so on. Now, you can say, well, that's unconscionable. That's terrible. How would you do that? But they did, and it's lawful. Nobody's ever found it to be the contrary, and this is quite very much the same, except it's on a national level, is it not? I'm afraid I disagree, Your Honor, because although you may label these as interest for purposes of the exportation doctrine, that doesn't settle their status constitutionally. And in Sebelius, the Affordable Care Act case, the Supreme Court held that something might be a tax or a penalty for one purpose, but from a constitutional point of view, that statutory classification did not settle the constitutional issue. And to settle the constitutional issue, we think, as the Court said in Sebelius, that you should look at the function of these damages, and they do not function as performance terms in a contract. To return to your earlier question, they're not an exchange of money for an item or an object or a service. They are rather a penalty that's imposed for a violation. For which the parties, concerning which the parties have agreed. In writing. Well, Your Honor, these are not normal contract clauses. These are remedial clauses, and remedial clauses have always been the purview of the judiciary. Are these contracts of adhesion? Yes, they are. We allege that in the complaint. But I don't have to rent my video. No, you do not. But the traditional contract law would nevertheless not permit those liquidated damage clauses to be enforced, because those clauses try to tell the judiciary what remedies to impose, and they've always been very strictly policed. And we argue that if you're going to lift that policing, at least you have to ensure that the penalties satisfy due process and that they are not arbitrary deprivations of property. Your Honor, I think we're talking about two subjects, and going back and forth. One is whether there is a constitutional prohibition against excessive charges, which could be described as penalties, or whether the Constitution, unlike torts, doesn't prohibit excessive penalties or forfeitures or whatever you would label them. And the second question is whether the amount imposed here in this particular case would violate the constitutional rule if there were a constitutional rule. And you started off with three categories of answers, and we sort of elided them and come down to the question of whether in this particular case it would be a violation of the constitutional rule if there were a constitutional rule. I'm not sure, have you answered this initial question about the three sub-issues you were going to deal with? Well, I think we've addressed the issue of whether or not these are penalties. And I've mentioned that the difficulty of thinking of them as pure contractual terms is that they are both enabled by a web of Federal and State statutes, and they are not standard contractual terms. They have never been thought to be part of the terms of performance, but rather have been thought to be unenforceable clauses subject to strict judicial review. But the other issue we have not perhaps discussed is State action. Is that what you're asking me to address, Your Honor? We'll give you a little extra time if you want to address that. Sure. So the argument we want to make about State action is that there's no less State action in this case than there was in State Farm, where one private party sought punitive damages from another private party, and the judicial award was reviewable under the Constitution. And our claim here is that for these charges to be legally enforceable, it would have to be that a judge could enforce them consistent with State Farm v. Campbell. We challenge whether that could be, given that they're grossly excessive and there's no reprehensibility. And second, because the defendants rely on a statute to defend their activity, we argue that statute must be analyzed for constitutional infirmity. And because the statute purports to authorize penalties of any size whatsoever, so long as they are merely announced in advance, that does not seem as though that interpretation could be consistent with the Constitution because it would override the traditional judicial role in policing penalties and punitive damages. There would have to be some limits. We offer an interpretation of the National Bank Act that avoids the very difficult constitutional question of whether mere notice of an intention to impose incredibly excessive penalties would be sufficient to satisfy due process. Thank you, counsel. Thank you. We'll give you a couple of minutes for rebuttal. Thank you. May it please the Court, Noah Levine for the defendants. I want to pick up on one of the first things you said, Judge Smits, which is that plaintiff's theory requires three unprecedented leaves, I think was the word you used. First of all, there's no conceivable due process clause issue here. They are requiring the leap of saying that the due process clause prohibits the government from allowing parties to voluntarily establish their payment terms by contract. That would be the first leap to say, I mean, we think that issue cuts through everything in this case. The second leap is to say that credit card late and over limit fees are punitive damages, which is a term that has a long pedigree and is widely accepted meaning at law. And we think the third leap that you would have to make in this case is to reinterpret the National Bank Act, which has been around for almost 150 years and interpreted many times by the Supreme Court as an enabling statute that allows you to charge your interest of your home state nationwide, now to be read as a prohibition that would bring in a three-guidepost test from State Farm along with every one of the factors that comes in under each of those three guideposts and read that into the statute to presumably save it. Well, you know, if we were the Supreme Court, we could do all of those things you mentioned. You know, the Second Amendment was around for hundreds of years before the Supreme Court, we say, interpreted it in a way that no one else ever had. If we were the Supreme Court, we could also decide that punitive damages applied under the Constitution barred excessive damages in tort cases. Tort cases were around for hundreds of years before the Supreme Court decided that. And I think counsel would probably agree with you that what she is asking is that we act as a court that's dealing with issues of first impression, such as whether now that the law is that the Constitution bars excessive damages in tort cases, it could also be extended to bar excessive damages and forfeitures in tort cases, which was the common law. So, I mean, I don't think anyone would disagree that it takes big leaps to arrive at that. Well, let me explain to you why I think they're more than leaps. I think there's a fence you can't get over in every one of those situations. Yes, that's what I'd like to hear. Sure. Let's start with the Due Process Clause. This is an issue that we think cuts through all the briefing in this case and that the plaintiffs haven't answered, which is that the Due Process Clause is a prohibition on the government interfering with a person's liberty or property rights. What we have at issue here, when you put together the National Bank Act, DITA, and the state statutes at issue, is a statutory scheme that allows parties to enter into contracts voluntarily and set payment terms. We think it would be counterintuitive to construe the Due Process Clause to prohibit the government from doing that, as opposed to allowing maximum interference in the economic sphere. Well, there are two questions about that. The common law did prohibit it, didn't it? The common law prohibited it. That's my very next point I was going to make, Judge Reinhart, is that the plaintiff's response is not to point to anything in the Constitution. When you asked the question from the bench, the response for a case was, look at HITS, look at Beasley. These are state court decisions in California that were applying a state statute of contract law. But contract law is not... Well, I was just asking about generally. The common law was that even though people would enter into contracts voluntarily, they could not enter into contracts, or at least they wouldn't be enforceable, if you had a penalty clause that was excessive. And liquidated damages had to be measured by what was actually people thought were damages. You couldn't just impose in common law a $1,000 fine for being a day late, if that's what you agreed to. So it wasn't enough in common law that parties just agreed to it voluntarily, was it? Well, that is a rule of common law. And I'm not going to dispute that, but when you read all the contract treatises and everything, the reason that rule exists is because the purpose of contract law is purely compensatory. You're not allowed to have a penalty at all. That's exactly the opposite of the Supreme Court's Due Process Clause cases. Penalties are expressly permitted. That is the reason for punitive damages, as Judge Nelson pointed out. However, in situations where the common law allows punitive damages without any guideposts whatsoever to protect against arbitrariness, the Supreme Court put in these protections. But the issue here is they're asking you to constitutionalize the common law of contracts, and they're not locating anything. That's the question. You said there's a barrier to that. And what is the barrier to it? The barrier is that there's nothing in the words of the Due Process Clause. There's not even a value in the Due Process Clause that is offended here by allowing private parties to order their financial affairs as they see fit by contract. Let me ask you about what Judge Nelson asked about. She asked about contracts of adhesion, people who want to have a telephone, say, and you need a telephone. If they could only get a telephone if they paid a $1,000 fine if their bill was a day late, would there be no constitutional prohibition against that? There would be no constitutional prohibition. I'm not going to sit here and defend that. I mean, look, as Judge Nelson said, in that situation, I mean, are we going to now apply the constitutional rule of State Farm to your video store, to your telephone store? I'm not asking about that. I gave you an example about the telephone bill. If the only way you could get a telephone would be to agree to pay a bill of a $1,000 fine if you were a day late, would there be no constitutional prohibition? There would be no constitutional prohibition because of the word you used there, agree. You don't have to agree. As Judge Nelson says, you don't have to enter into the contract. You have to agree if you want a telephone. If you want a telephone with that company, but you don't have to enter. Let's assume all telephone companies did that, and you couldn't get a telephone in this country unless you agreed to pay a $1,000 fine if you were a day late. There would be no constitutional. You could not find that to be a constitutional violation. It would not be. States can experiment and decide what they want to do in terms of contract law and say we want our contract law to be compensatory, or we want our contract law to allow some penalties. But the other point here is that on the... Why can't they do that with tort law? With tort law? Yeah. Well, they can with tort law. They can say that right now all that the Supreme Court has held in their cases is that when you have unconstrained punitive damages where there is no fair notice to the party whatsoever, you have to have some guideposts for judicial review of those damages. So they provide for judicial review. But the second big wall I want to make sure I address is that these aren't punitive damages in the first place. I mean, punitive damages do have a long pedigree at common law. We cite the Moles-Off case in our briefs, and we think that is dispositive on this issue. The government made the exact same argument that the plaintiffs are making here when the word punitive... There's something wrong with the mic. Let's see. Maybe I'm too short. I'll try to grow. The Moles-Off case, the government made a very similar argument. They said that punitive damages should mean any type of damages that bear no reasonable relation to compensation. And what the Supreme Court said in that case was no. They have a long pedigree at common law, and there is a widely accepted meaning. They are damages that are imposed by a court to punish conduct, as Judge Nelson's question pointed out before. And it's not any damage that is... I think I'm picking up the same thing. I apologize. It's not any damage that would bear no reasonable relation or exceed the amount of compensation. There are very... A punitive damage award, as has been considered in cases like BMW and cases like State Farm, is an award that is ordered by a court in a litigation against the consent of the party for the purpose of punishment and in an instance in which there is a danger of arbitrariness. And we don't have any one of those five things here in this case. That's why I think it would not only be a stretch, but it's not supported under the rationale for those cases. And the last thing is, you know, what counsel said was the reason there's state action here, she said there's no less state action than State Farm. In fact, there is a lot less state action. You're talking about a court having issued an award in those cases and that being judicially reviewed. They didn't hold that the common law of Alabama was unconstitutional because it allowed for excessive punitive damages. It said that when it was applied in that case and when you asked the court to enforce it, that was unconstitutional. Whatever the State Farm line of cases mean, it certainly doesn't say that you can invalidate contracts standing on their own that are entered into in the private sphere. To get back to an earlier point that both my colleagues made in the colloquy with your opposing counsel, the issue of the video, for example, and the issue of the phone bill, in fact, as evidence that the common law doesn't take care of the problem, the legislature of California has been exceptionally active in passing statute to address those very kinds of issues. Some of them have run afoul of federal law in terms of arbitration clauses, but the reality is that most of them have been designed to soften the, what shall I call it, the adhesive nature of certain types of contracts. But the common law provided no remedy to it. It was not enough. And so the legislature got involved, and of course the legislature, subject to Rietman and others, has the right to do that. And that's how California, for example, has met the problem of liquidated damages and so on, the Uniform Commercial Code being one of the enactments. But it's not a constitutional issue, and the common law does not solve the problem that my colleagues mentioned, does it? Well, no, it doesn't. And that's our point, is that their position would say that California was constitutionally required to do what you just said they did by legislation, that, in fact, the absence of such legislation would violate the Constitution because now people could enter into contracts without any rule that was going to bar them from setting the payment terms as they wish. Well, the only disagreement I would have with that at all in your conclusion is that the Supreme Court has been remarkably activist lately and has developed the law, as in the examples I gave you, the Second Amendment, where for hundreds of years there was no court decision giving the rights to individuals to protect possessed assault weapons and other things where we shoot up the schools. Up until recently there was no Supreme Court decision saying that tort law was subject to the Constitution when the verdicts were too high. I'm not suggesting that up until now there has been nothing that the Supreme Court has interpreted in the Constitution to find that contracts which have penalties violate the Constitution. And I don't think anyone would disagree that this would be a novel extension of the law beyond where it has gone thus far. The only question I think that's presented in the case is whether the courts should do what they did with tort law and do the same with contract law. Yes, and I take what you say. And I sense even maybe a bit of pleasure in seeing that some of your conservative colleagues on the Supreme Court are being activists. I don't take any pleasure in that at all. Not in the rule that's coming out of it. But to take your point, there is no basis in the State Farm Rule of Cases. There is no basis in the Due Process Clause for extending it here. The only thing you would be doing is extending it out of pure policy reasons, because there's no value in the Due Process Clause that's being offended by a statutory scheme in the combination here. There's none of the hallmarks of a punitive damages award in a contractual payment term. That's the issue, yes. Is there a value where people, in order to get the goods and necessities of life, are required to sign contracts that may have these kinds of unreasonable penalties? Is that a value? Some might think so, some might not. But it's certainly a question of whether with all the contracts of adhesion these days, there is a value that would be protected. Well, I think not a value from the Due Process Clause. It's not the government depriving anyone. But I would also say that I don't think we're talking about It is when you come to court and the government then enforces it. That's not an issue here. This lawsuit is to invalidate the contractual provisions as they sit in the contracts already. And I don't think we're talking about charging $100 to get your groceries or to get your food. We're talking about credit cards here. They are a very convenient form, but there are many forms of payment. One does not have to enter into these contracts if they don't want the fees. If there is a problem, as is raised in some parts of the brief, that it's an adhesion contract where they don't think they have notice, that's a totally separate issue to bring up under state contract law as to whether or not a contract was formed or not. But we don't need to constitutionalize the common law of contracts to solve that. Thank you. Your Honors, I'd like to address two points. The first is the last one made, that legal enforceability is not at issue here. It is, of course, exactly at issue. For these charges to be legal interest under the National Bank Act, they must be legally enforceable. And we challenge whether a judge could legally enforce these, given the protections of State Farm. And we challenge whether the National Bank Act, if it is interpreted to authorize penalties of any size, without any limits whatsoever, could possibly be consistent. Can you tell me one thing? Are you saying that Pinon is the subject of a lawsuit by the bank or banks with which he has credit cards, and they're trying to collect the $39? Is that what you're saying? No, Your Honor. We are saying that for the charge against Pinon to be legal, the credit cards represent that charge is legally enforceable. I understand. But I thought the opposing counsel was talking about something different, where you were trying to enforce it. And I misunderstood you. I thought you were saying that that's what we're dealing with here. We're really not. This is more of a declaratory relief kind of issue, is it not? A retrospective, because he's paid the charges. Indeed. Yes. Could you explain to me? I missed something. Where do they have to represent that it's legally enforceable? They do represent it by charging it, and they can only legally charge what they are legally entitled to receive. And for them to legally receive it, it would have to be that they could, in an action, receive those penalties in a breach of contract case, but those penalties would be regarded as a form of punitive damages or penalties for the legal violation of breach. And that would bring us into the realm of asking whether legal violations can be penalized to this grossly excessive extent. And the idea that merely because they appear in a contract, indeed a contract of adhesion, that that satisfies all due process concerns has very major implications. It suggests that just by announcing a penalty, that all forms of judicial review are exempt, have been entirely displaced. And the reason why cases of this kind have not come up before is because this is so anomalous. We only started seeing grossly excessive penalty fees for contract violations within the last 15 years. So the case would only have come to you by now. The judiciary, through the common law, used to police these forms of penalties very carefully, and so due process was met through the standard mechanisms of the common law. And although the National Bank Act can preempt that and authorize some penalty fees, they can't entirely displace the role of the judiciary, and they can't entirely preempt the ability of states to ensure that our punitive reactions to legal violations are fair. And the fact that the consumers here are barely culpable is all the more reason to ensure that some due process review is exercised for these penalties. The second point I want to address before we end. Before you run out of time, which will be soon. Yes. Is Molzoff. And Molzoff is inapplicable to this case. It analyzes punitive damages as they are meant in the Federal Tort Claims Act. And the reason why the court interprets them as narrowly as they do is because it's necessary in order to show that sovereign immunity was waived. It's a very different kind of case, and we think the more proper forum to analyze contractual damages is as they would be analyzed in the common law. Thank you, Your Honor.
judges: Nelson, Reinhardt, Smith